FILED

2000 Oct 23 P 4:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **MATTIE Y. STONE,** | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 99-B-2799-NE |
| **LOUIS CALDERA, Secretary of the Army,** | |
| Defendant. | |



ENTERED
OCT 23 2000

## MEMORANDUM OPINION

Currently before the court is Defendant's Motion to Dismiss filed by Louis Caldera, Secretary of the Army ("defendant" or "Caldera"). Plaintiff, a civilian employee of the Army at Redstone Arsenal, Alabama, filed this civil action against defendant alleging discrimination under Title VII of the Civil Rights Act and various other theories including common law intentional torts. Plaintiff's Amendment One to Complaint asserts the following claims: (1) the suspension of her security clearance was discriminatory based upon her handicap (unspecified physical), her race (black), her sex (female), and her religion (non-denominational), and was retaliatory for prior protected EEO activity, (Amendment One to Complaint ("Am. Compl.") at ¶ 12); and (2) defendant committed fraud, misrepresentation, deceit, defamation of character, the tort of outrage, and defendant knowingly, willfully, and maliciously fabricated medical records to accomplish acts of discrimination and/or retaliation, (*id.* at ¶ 13). Defendant moves to dismiss all claims either for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that Defendant's Motion

17

to Dismiss is due to be granted.

## I. FACTUAL SUMMARY

Plaintiff is a civilian employee of the Department of the Army. On March 31, 1998, her security clearance was temporarily suspended pending further adjudication of plaintiff's case. (Am. Compl. at ¶ 8; Declaration of Ms. Ruby S. Childers ("Childers Decl.") at ¶ 5, Ex. A.) The notice of Intent to Revoke Security Clearance provided plaintiff with an opportunity to respond in writing with any information or explanation that she thought should be considered in reaching a final decision in her case. (Childers Decl. at ¶¶ 5-6, Exs. A-B.) Plaintiff then filed a response. (Am. Compl. at ¶ 9; Childers Decl. at Ex. C.) After an investigation, plaintiff's security clearance was restored on January 11, 1999. (Childers Decl. at ¶ 7, Ex. C.) Plaintiff's security clearance was never revoked. (*Id.* at ¶ 8.)

Plaintiff contacted the EEO Office on July 28, 1998. (Declaration of Ms. Kate F. Love ("Love Decl.") at Ex. A.) At that time, plaintiff alleged that she was the victim of discrimination on June 27, 1998. (*Id.*) Plaintiff filed a Formal Complaint of Discrimination on April 5, 1999. (*Id.* at Ex. B.) By letter dated June 25, 1999, the Army issued a Final Decision on the claims raised in plaintiff's Formal Complaint. (*Id.* at Ex. C.)

The Army's Final Decision delineated plaintiff's allegations and set out the reasons for dismissal of each allegation. (*Id.*) Plaintiff first alleged that she was singled out when her security clearance was suspended beginning on March 31, 1998. (Love Decl. at Exs. A, C.) The Agency dismissed this allegation for two reasons. (*Id.* at Ex. C.) First, it was dismissed in accordance with 29 C.F.R. § 1614.107(a) for failure to state a claim pursuant to 29 C.F.R. § 1614.103. (*Id.*) Citing *Sharpe v. Secretary, Department of the Navy,* 01974204 (1988), the Agency noted that alleging suspension of a security clearance based upon "race, gender, religion,

2

handicap, and/or reprisal do[es] not state a claim cognizable under Title VII." (*Id.*) Second, this allegation was dismissed as untimely pursuant to 29 C.F.R. § 1614.107(b). (*Id.*) The Agency noted that plaintiff's security clearance was temporarily suspended on March 31, 1998; however, she failed to contact an EEO counselor until July 28, 1998, more than forty-five days later. (*Id.*) The decision further stated: "Since you have previously engaged in EEO activity by filing an informal complaint on May 9, 1997 . . . , you [are] deemed to be aware of the time limits for filing an EEO complaint. *See Briley v. Archivist,* 05950788 (1996)." (*Id.*)

Plaintiff also alleged that the security office informed the Multiple Launch Rocket System ("MLRS") security officer to deliver an electronic mail message to all employees concerning the suspension of plaintiff's clearance on April 28, 1998. (*Id.* at Exs. A-C.) The Agency also dismissed this claim for failure to timely contact an EEO counselor. (*Id.* at Ex. C.) The Agency noted that although plaintiff alleged that an e-mail message concerning the status of her security clearance was disseminated on April 28, 1998, she failed to contact an EEO counselor until July 28, 1998, more than forty-five days later. (*Id.*)

Finally, plaintiff alleged that on June 17, 1998, she received copies of information under the Freedom of Information Act ("FOIA") submitted by Dr. Linda Gentle and General Flohr in reference to the perception of diagnosis and history of diagnosis concerning her temporary illness on April 30, 1998, and May 21, 1997. (*Id.* at Exs. A-C.) The Agency dismissed this claim pursuant to 29 C.F.R. § 1614.103 for failure to state a claim. (*Id.* at Ex. C.) The decision noted that "[t]he [Equal Opportunity] Commission has held . . . that 'derogatory' statements contained in security clearance files [are] beyond the jurisdiction of the Commission," and has "upheld the dismissal of an allegation pertaining to derogatory statements found in a security file obtained through FOIA." (*Id.*)

Plaintiff has not filed an administrative tort claim asserting the torts alleged in her Complaint. (Declaration of Cpt. Andrew J. Sinn ("Sinn Decl.");[1] Declaration of John H. Belser, Jr., Colonel, JA ("Belser Decl.").[2])

## II. APPLICABLE STANDARDS

The court must dismiss a claim if the court lacks subject matter jurisdiction over the claim. Fed.R.Civ.P. 12(b)(1), 12(h)(3). According to the United States Court of Appeals for the Eleventh Circuit:

> [I]t is extremely difficult to dismiss a claim for lack of subject matter jurisdiction. . . . Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms: "facial attacks" and "factual attacks." . . . Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. . . . Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

*Garcia v. Copenhaver, Bell & Associates, M.D.'S, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (internal citations and punctuation omitted).

The court is also empowered to dismiss an action "for failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Such a motion should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted); *accord Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The court must take factual

---

[1] Captain Andrew J. Sinn is the Claims Judge Advocate for Army Aviation and Missile Command, Redstone Arsenal, Alabama. (Sinn Decl.)

[2] Colonel John H. Belser, Jr. is the Chief of Tort Claims Division, U.S. Army Claims Service, Fort Meade, Maryland. (Belser Decl.)

4

allegations as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. *In re Johannessen*, 76 F.3d 347, 350 (11th Cir.1996). The court is under no duty to rewrite plaintiff's complaint to find a claim. *Peterson v. Atlanta Housing Authority*, 998 F.2d 904, 912 (11th Cir. 1993).

### III.   DISCUSSION

**A.   Plaintiff's Claim of Discriminatory Suspension of Security Clearance**

Plaintiff's discrimination claim alleges that the suspension of her security clearance was retaliatory and discriminatory based upon her handicap (unspecified physical), race (black), sex (female), and religion (non-denominational). (Am. Compl. at ¶ 12; General Complaint Form for *Pro Se* Litigants at ¶ 4.) Plaintiff disputed the Agency's dismissal of this allegation based on untimeliness; thus, defendant does not raise untimeliness as a defense in this Motion. However, the Agency also dismissed this allegation for failure to state a claim because it dealt with security clearance suspension. (Love Decl. at Ex. C.) Defendant contends that the court lacks subject matter jurisdiction over this claim on this basis. (*See* Memorandum in Support of Defendant's Motion to Dismiss ("Def.'s Br.") at 6-10.)

The court agrees with defendant's contention that it lacks subject matter jurisdiction to hear plaintiff's claims which arise exclusively from the decision to suspend her security clearance. It is well-settled that courts may not review security clearance determinations, including suspensions, revocations, or denials. In *Department of Navy v. Egan*, 484 U.S. 518 (1988), the Supreme Court found that the power of the Executive Branch to control access to material "bearing on national security" and to determine whether a person is "sufficiently trustworthy" to have access to such material flows from the constitutional vesting of the "Executive Branch" in the President as well as his constitutional powers as "Commander in

5

Chief." 484 U.S. 518, 527 (1988). In *Egan*, the Court held that the Merit Systems Protection Board -- which reviews adverse actions under the civil service laws -- had no authority to review the substance of an underlying decision to deny or revoke a security clearance when reviewing an adverse employment action. (*Id.* at 526-30.) The Court recognized the general presumption that review of agency action "runs aground when it encounters concerns of national security . . . where the grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." *Id.* at 527.

In *Egan*, the Court noted that no one has a "right" to a security clearance, "the grant of a clearance requires an affirmative act of discretion on the part of the granting official," and such clearance may only be given when "clearly consistent with the interests of the national security." *Id.* at 528 (internal quotation marks and citations omitted). The Court explained that security clearance decisions are not to be equated with passing judgment upon an individual's character:

> Instead, it is only an attempt to predict his possible future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information. . . . The attempt to define not only the individual's future actions, but those of outside and unknown influences renders the "grant or denial of security clearances . . . an inexact science at best."

*Id.* at 528-29 (*quoting Adams v. Laird*, 420 F.2d 230, 239 (D.C. Cir. 1969)). "Predictive judgment of this kind must be made by those with the necessary expertise," and "'an agency head who must bear the responsibility for the protection of classified information committed to his custody should have the final say in deciding whether to repose his trust in an employee who has access to such information.'" *Id.* at 529 (*quoting Cole v. Young*, 351 U.S. 536, 546 (1956)).

The *Egan* Court also observed that nonexpert entities, like the MSPB and the EEOC, lack the institutional competence to second-guess this type of Executive decision:

6

> Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk.

*Id.* at 529. The Court further noted, "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in . . . national security affairs." *Id.* at 530. Thus, *Egan* created a strong presumption that security clearance decisions cannot be statutorily challenged because they are discretionary judgments committed to the Executive Branch by law.

*Egan* precluded MSPB administrative review of security clearance decisions; however, it has been extended to preclude judicial review of such determinations in other contexts including discrimination claims. A number of courts have held that judicial review of a security clearance revocation is precluded under Title VII. *See, e.g., Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999) ("[W]e hold that under *Egan* an adverse employment action based on denial or revocation of a security clearance is not actionable under Title VII."); *Becerra v. Dalton*, 94 F.3d 145, 148 (4th Cir. 1996) (affirming the district court's holding that it lacked subject matter jurisdiction to review the merits of the Navy's decision to investigate the plaintiff or its ultimate security clearance decision); *Perez v. F.B.I.*, 71 F.3d 513, 514-15 (5th Cir. 1995) ("As the Supreme Court and several circuit courts have held that . . . scrutiny [of the revocation of an employee's security clearance] is an impermissible intrusion by the Judicial Branch into the authority of the Executive Branch over matters of national security, neither we nor the district court have jurisdiction to consider those matters."); *Brazil v. United Stats Dep't of Navy*, 66 F.3d 193, 196 (9th Cir. 1995) ("The Supreme Court's holding in . . . *Egan* . . . , and our own in *Dorfmont v. Brown*, . . . preclude judicial review of security clearance decisions made by the Executive or his

7

delegee. That bar to review applies equally, we conclude, in the context of a Title VII discrimination action."); *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990) ("When it comes to security matters, a federal court is 'an outside nonexpert body.' We have no more business reviewing the merits of a decision to grant or revoke a security clearance than does the MSPB. Thus, the reasoning behind *Egan* precludes this type of judicial review."); *Hill v. Department of Air Force*, 844 F.2d 1407, 1409 (10th Cir. 1988) (*Egan* "removes any doubt regarding the authority of federal courts to review the merits of the grant or denial of security clearances."); *Mitchell v. Crowell*, 966 F.Supp. 1071, 1079 (N.D. Ala. 1996) (concluding that "this court is without authority to review TVA's decision to deny plaintiff's security clearance"), *recon. denied,* 975 F.Supp. 1440 (N.D. Ala. 1997).

It is not necessary for plaintiff to challenge the actual decision whether to grant, revoke or suspend a security clearance to preclude judicial review. It is sufficient to preclude district court jurisdiction if the court would be required to review the substance of a security clearance determination in resolving a separate issue. *See, e.g., Guillot v. Garrett*, 970 F.2d 1320, 1323 n.7, 1326 (4th Cir. 1992); see *also Becerra*, 94 F.3d at 149 (court found that attempting to assert a claim concerning the instigation of a security clearance investigation as opposed to a claim concerning the denial of a security clearance "is a distinction without a difference" and upheld the non-reviewability of plaintiff's claim). Thus, in this case, the court lacks subject matter jurisdiction over plaintiff's discrimination claims concerning the suspension of her security clearance.[3]

---

[3] Plaintiff contends that "this Court has jurisdiction to determine whether Defendant violated its regulations; whether Defendant's agents conspired to discriminate/retaliate against her by suspending her security clearance; and/or whether she has met her burden of establishing a prima facie case of discrimination/retaliation." (Plaintiff's Response to Defendant's Motion to

8

**B.   Tort Claims**

 *1.   Preemption*

Plaintiff asserts common law tort claims alleging that defendant "committed fraud, misrepresentation, deceit, defamation of her character, and the tort of outrage; and that the Defendant knowingly, willfully and maliciously fabricated medical records to accomplish its acts of discrimination and/or retaliation." (Am. Compl. at ¶ 13.) Plaintiff further "asserts that her tort claims were submitted through the administrative process as part of her EEO complaint and in support thereto; and that her tort claims are inextricably intertwined with her claims of discrimination and retaliation." (Pl.'s Br. at 3.) Because plaintiff's tort claims arose from her federal employment, these claims are barred by the exclusive, preemptive remedies provided by the Civil Service Reform Act ("CSRA") and Title VII. *Brown v. General Services Administration*, 425 U.S. 820, 835 (1976); *Canino v. United States Equal Employment Opportunity Commission*, 707 F.2d 468, 472 (11th Cir. 1983). A plaintiff may not avoid the remedial schemes of the CSRA and Title VII through "the simple expedient of putting a different label on [the] pleadings." *Brown*, 425 U.S. at 833.

---

Dismiss ("Pl.'s Br.") at 1-2.) In her submissions before the court, plaintiff quotes extensively from *Horton Homes, Inc. v. United States of America*, 936 F.2d 548 (11th Cir. 1991), and *Jamil v. Secretary*, 910 F.2d 1203 (4th Cir. 1990). (*See* Pl.'s Br. at 2-3.) Plaintiff further asserts that she "has submitted sufficient pleadings" to support the previously enumerated allegations. (Pl.'s Br. at 3.)

 The *Horton Homes* case is not dispositive of the present case; the discussion in *Horton Homes* relevant to the present case is dicta. Further, the court ultimately concluded that, in the case before it, the district court was barred from exercising its jurisdiction. *Horton Homes*, 936 F.2d at 553-54. The *Jamil* case is more closely analogous to this case, although it is significantly distinguishable from the present case, and appears to be somewhat of an aberration from the case law in this area. Further, in later decisions, the Fourth Circuit refused to review security clearance determinations in actions brought under the Rehabilitation Act, 29 U.S.C. §§ 791-794, and Title VII. *See Becerra v. Dalton*, 94 F.3d 145, 148 (4th Cir. 1996); *Guillot v. Garrett*, 970 F.2d 1320, 1326 (4th Cir. 1992).

9

Title VII is the exclusive, preemptive remedy for discrimination claims in federal employment. *Canino*, 707 F.2d at 472. Since plaintiff's tort claims concern the same facts as her discrimination claims, Title VII and the Rehabilitation Act pre-empt the "discrimination" aspects of these claims. *See Hampton v. Internal Revenue Service*, 913 F.2d 180, 183 (5th Cir. 1990) ("Equally well settled is the principle that damage claims in Title VII cases sounding in tort are barred as a matter of law.").

To the extent that plaintiff's tort claims are based upon allegations of nondiscriminatory conduct, they are barred by the exclusive, preemptive nature of the CSRA. *See United States v. Fausto*, 484 U.S. 439 (1988). The exclusivity of the CSRA preempts state law tort claims brought by federal employees against the federal government for nondiscriminatory conduct. *See Broughton v. Courtney*, 861 F.2d 639, 640-44 (11th Cir. 1988) (court held that the CSRA preempted a state law tort claim involving federal employment personnel decisions where a federal employee sued his supervisors in tort, claiming malicious interference with his employment).

In this case, plaintiff's claims under state tort law are an attempt to circumvent Title VII, the Rehabilitation Act, and CSRA remedies. There is no doubt that plaintiff's tort claims arose out of the employment relationship, and thus fall squarely within the scope of Title VII, the Rehabilitation Act, and the CSRA. Plaintiff does not dispute that her tort claims are preempted by Title VII, the Rehabilitation Act, and the CSRA. In fact, her assertion that her "tort claims are inextricably intertwined with her claims of discrimination and retaliation" is the very reason why such claims are preempted. Tort claims that arise from a plaintiff's federal employment relationship are barred by the exclusive, preemptive remedies provided by Congress in the CSRA and federal employment anti-discrimination laws. *See, e.g., Brown v. General Services*

10

*Administration*, 425 U.S. 820, 835 (1976). Thus, plaintiff's tort claims are due to be dismissed for failure to state a claim.

### 2.   *Waiver of Sovereign Immunity*

Additionally, plaintiff failed to plead waiver of sovereign immunity regarding her tort claims asserted in paragraph 13 of plaintiff's Amendment One to Complaint. The United States cannot be sued, except as it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). For a damages action to proceed against the United States, there must be a clear waiver of sovereign immunity, or the court lacks subject matter jurisdiction. *See id* at 586, 590. Because plaintiff failed to plead waiver of sovereign immunity as to her tort claims, such claims are due to be dismissed for lack of jurisdiction and failure to state a claim.[4]

### 3.   *Proper Defendant*

Even if plaintiff asserted claims under the FTCA, she still cannot establish a viable claim against the named defendant. The FTCA is a limited waiver of the general sovereign immunity of the United States for tort claims. The United States, not the Secretary of the Army, is the only proper defendant in an FTCA suit. Thus, under the FTCA, plaintiff brought suit against an improper defendant. An FTCA suit filed against any federal agency or employee, as opposed to the United States, must be dismissed for lack of subject matter jurisdiction. *See, e.g., Galvin v. O.S.H.A.*, 860 F.2d 181, 183 (5th Cir. 1988) ("[A] suit against the United States under the FTCA is the exclusive remedy for tort claims arising from the actions of government agencies or

---

[4] The court notes that the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.*, "waives the United States government's sovereign immunity from suit in federal courts for the negligent actions of its employees." *Cohen v. United States,* 151 F.3d 1338, 1340 (11th Cir. 1998). However, the FTCA waiver of immunity is subject to several exceptions. *Id.* Plaintiff failed to plead jurisdiction pursuant to the FTCA, and as will be discussed below, any claims she might have brought pursuant to the FTCA fall within an exception.

employees. . . . Thus, an FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction.")

### 4. *Exhaustion of Administrative Remedies*

Another limitation of the FTCA is that no tort action can be instituted against the United States until an administrative tort claim has been filed with the appropriate federal agency. 28 U.S.C. § 2675(a). Compliance with § 2675(a) is a jurisdictional prerequisite to maintaining a tort lawsuit against the United States. *Lykins v. Pointer Inc.*, 725 F.2d 645, 646 (11th Cir. 1984); *Gregory v. Mitchell*, 634 F.2d 199, 203-204 (5th Cir. Jan. 12, 1981). Plaintiff has never filed an administrative tort claim addressing the claims she is attempting to raise in this civil action. (Sinn Decl.; Belser Decl.)

Plaintiff asserts that she submitted a tort claim as "part of her EEO complaint." (*See* Pl.'s Br. at 3.)[5] Plaintiff has not, however, offered any legal support for her theory that asserting tort claims in the EEO process, which is designed to resolve employment discrimination disputes, would place the Army on notice that she intended to assert a tort claim under the FTCA. Thus, the court concludes that the tort claims in paragraph 13 of plaintiff's Amendment to Complaint must be dismissed for lack of subject matter jurisdiction.

### 5. *Exceptions to The FTCA*

Further, plaintiff has failed to assert a claim for which the United States has waived sovereign immunity. "The United States, as sovereign, is immune from suit save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Sherwood,* 312 U.S. at 586. The enactment of the FTCA constitutes a

---

[5] Plaintiff has presented no evidence that she specifically asserted – or even mentioned – tort claims in her informal EEO pre-complaint counseling or in her formal EEO complaint.

limited waiver of the United States' immunity from suit. The purpose of this Act is to compensate victims of tortious governmental conduct if, under similar circumstances, a private individual would be held liable. *Indian Towing Co. v. United States*, 350 U.S. 61, 68 (1955). Congress, however, has specified particular instances in which sovereign immunity has not been waived. These "exceptions" to the FTCA are embodied in 28 U.S.C. § 2680(a)-(h). In determining the parameters of these exceptions, federal law controls. *See United States v. Neustadt*, 366 U.S. 696, 705-06 (1961).

The misrepresentation exception to the FTCA is contained in § 2680, which provides in pertinent part:

> The provisions of this chapter and section 1346(b) of this title shall not apply to
> . . .
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . .

If the conduct alleged falls within a statutory exception, the court lacks subject matter jurisdiction over the action. *See Boda v. United States*, 698 F.2d 1174, 1176 (11th Cir. 1983). Such a defense is jurisdictional and can be raised at any point in the proceedings. *See id.*

The misrepresentation and deceit exception deprives courts of jurisdiction over tort claims against the United States based on a plaintiff's reliance upon governmental misinformation or failure to communicate correct information. *Neustadt*, 366 U.S. at 705-706, 711; *Block v. Neal*, 460 U.S. 289, 297 (1983). The exception encompasses negligent as well as deliberate misrepresentation. *Neustadt*, 366 U.S. at 702, 704. It applies equally to affirmative or implied misstatements and negligent omissions. *See Preston v. United States*, 596 F.2d 232, 237-39 (7th Cir. 1979). The fact that federal employees may be under a specific statutory or regulatory duty to provide the information does not render the exception inapplicable. *Neustadt*,

366 U.S. at 710-11. The scope of the exception is a matter of federal law: whether recovery is precluded is solely dependent upon what Congress meant by the language of 2680(h), and not upon whether state law would allow recovery under analogous circumstances. *Neustadt*, 366 U.S. at 705-706. The "arising out of" language in 2680(h) is broad enough to include not only the specific torts listed therein but those claims arising out of the specifically listed torts. *See Metz v. United States*, 788 F.2d 1528, 1536 (11th Cir. 1986).

Plaintiff's tort claims alleging that defendant committed fraud, misrepresentation, deceit, defamation of character, the tort of outrage, and that the defendant knowingly, willfully, and maliciously fabricated medical records to accomplish acts of discrimination and/or retaliation, (Am. Compl. at ¶ 13), clearly arise under the misrepresentation and deceit exception to the FTCA. Thus, these claims are barred. Plaintiff has not disputed that the United States has specifically excepted the intentional torts alleged from the FTCA's waiver of sovereign immunity. As such, the court has no jurisdiction over plaintiff's tort claims.

## IV.   CONCLUSION

Based upon the foregoing analysis, this court concludes that this case is due to be dismissed. All claims are due to be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Plaintiff's tort claims are due to be dismissed on the additional ground of failure to state claim upon which relief can be granted under and Fed.R.Civ.P. 12(b)(6). The court lacks subject matter jurisdiction over claims related to the suspension of plaintiff's security clearance. With regard to plaintiff's tort claims, to the extent that they are not precluded for the same reasons as her discrimination claims, such claims are due to be dismissed because plaintiff has failed to cite jurisdiction for tort claims, she sued an improper defendant,

and she failed to file an administrative tort claim. An order granting Defendant's Motion to Dismiss will be entered contemporaneously herewith.

**DONE** this 23rd day of October, 2000.

_Sharon Lovelace Blackburn_
**SHARON LOVELACE BLACKBURN**
United States District Judge